UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FILED

JUN 6 2003

ROBERT H. SHEMWELL, CLERK
BY _____
     DEPUTY

| | |
|---|---|
| FREDERICK WILLIAMS, ET AL. | CIVIL ACTION NO. 02-0070 |
| VERSUS | JUDGE ROBERT G. JAMES |
| CITY OF MONROE, ET AL. | MAG. JUDGE JAMES D. KIRK |

OPINION

This is a civil rights action by Frederick Williams, individually and as the administrator of the estate of his minor child Valerie Williams, and by Lawanna Williams (collectively "Plaintiffs") against the City of Monroe, Officer Loyd Holton ("Officer Holton"), Officer Jeffery Pilcher ("Officer Pilcher"), Officer Christopher Hollingsworth ("Officer Hollingsworth"), and Officer Robert Biggers ("Officer Biggers") (collectively "Defendants") pursuant to 42 U.S.C. § 1983 and Louisiana law.[1]

This matter came for trial before the Court on May 13, 2003.

The Court hereby enters the following findings of fact and conclusions of law. To the extent that any finding of fact constitutes a conclusion of law, the Court hereby adopts it as such, and to the extent that any conclusion of law constitutes a finding of fact, the Court hereby adopts it as such.

---

[1] Officers Holton, Pilcher, Hollingsworth, and Biggers are sued in their individual and official capacities. "Official capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. New York City Dep't of Social Serv.*, 436 U.S. 658, 690 n.55 (1978)). Thus, Plaintiffs' claims against Officers Holton, Pilcher, Hollingsworth, and Biggers in their official capacities are construed as claims against the City of Monroe.

## I. *Findings of Fact*

On the afternoon of January 16, 2001, Frederick Williams and Lawanna Williams were on their way to pick up their daughter, Valerie Williams, from school. Frederick Williams was driving a 1991 GMC Jimmy with a 1998 Louisiana license tag # A019314. At approximately 3:42 p.m., while near the intersection of North Fourth and Breard streets in Monroe, Louisiana, Officer Hollingsworth (Unit 744) noticed that the license tag on Plaintiffs' vehicle was expired and radioed the dispatcher for a registration and stolen vehicle check. The dispatcher informed Officer Hollingsworth that the vehicle was not stolen, but that there was no record in the computer for a 1998 Louisiana license tag # A019314. Officer Hollingsworth then stopped Plaintiffs' vehicle for an invalid license tag.

Following the stop, Officer Hollingsworth radioed the dispatcher for a registration and stolen vehicle check based upon the VIN number of the vehicle. The dispatcher informed Officer Hollingsworth that the vehicle was not stolen, but that the state computer would not run back to 1998 on the Louisiana license tag and that there was no record on file for the VIN number. Officer Hollingsworth did not run a warrant check on Frederick Williams. Officer Hollingsworth was going off duty so he requested that Officer Holton (Unit 204) take over the stop. Officer Hollingsworth informed Officer Holton of the violations he had observed and left the scene at 3:59 p.m.

Although Officer Holton had been trained in traffic stops, he had not run across these types of violations before and requested assistance from a traffic unit. Officer Paul Harper (Unit 721) ("Officer Harper") was assigned to assist Officer Holton.

While Officer Holton waited for Officer Harper to arrive, Frederick Williams informed

2

Officer Holton that the vehicle had been bought in Texas. Officer Holton then had the dispatcher run the VIN number in Texas. The dispatcher advised Officer Holton that the VIN number belonged to a 1991 GMC, Texas license tag # 8846XC, with an expiration date of November 1996, registered to Theo LaGusta of Houston, Texas. After discovering that the license tag on the vehicle had been switched, Officer Holton gave the dispatcher Frederick Williams' Louisiana Driver's License # 5217795 and requested a warrant check of all agencies.

Meanwhile, Officer Harper arrived on the scene to assist Officer Holton. Officer Pilcher (Unit 722) also arrived at the scene. Officer Pilcher did not approve of Officer Hollingsworth having Officer Holton take over the stop, and requested that Officer Biggers, the shift supervisor, come to the scene. Although it is customary that the originating officer complete an investigation, it is not official department policy and, on occasion, another officer will take over an investigation. Officer Biggers had no objection to the switch between Officers Hollingsworth and Holton, and he left the scene approximately five minutes later.

The dispatcher entered Frederick Williams' driver's license number into the state computer and obtained his name and identifying information. With this information, the dispatcher called the West Monroe Police Department, who advised that they did not have any outstanding warrants for Frederick Williams. The dispatcher also called the Ouachita Parish Sheriff's Office ("OPSO") and spoke with an unidentified man. The dispatcher gave this man Frederick Williams' name, date of birth, and race. A few minutes later, an unidentified woman at the OPSO called the dispatcher and informed her that the OPSO had a warrant in hand for Frederick Williams. The dispatcher did not re-confirm Frederick Williams' date of birth, race, or other identifying information.

The dispatcher advised Officer Holton that Frederick Williams' driver's license was valid and that the OPSO had confirmed that they had an active warrant in hand for Issuing Worthless Checks ("IWC") for $750.

The warrant held by the OPSO was issued by Rapides Parish, Louisiana, for "Frederick M. Williams," a white male, D.O.B. 10/29/76, Louisiana Driver's License # 6170613, 5 foot, 7 inches tall with hazel eyes. This identifying information was apparent on the face of warrant.

Plaintiff Frederick Williams is a black male, D.O.B. 2/1/46, Louisiana Driver's License # 5217795, who is 5 foot, 11 inches tall with brown eyes. This identifying information was apparent on the face of Frederick Williams' driver's license.

There were no valid warrants for the arrest of Plaintiff Frederick Williams.

Based upon the information from the dispatcher, Officer Holton arrested, handcuffed, and placed Frederick Williams in the back seat of his police car.

Officer Holton also issued Frederick Williams citations for lack of insurance, lack of motor vehicle inspection sticker, switched tags, and failure to register. Officer Pilcher requested a wrecker and Williams' vehicle was impounded based upon these violations.

Lawanna Williams remained in the vehicle and was unable to speak with her husband. After speaking with Lawanna Williams, Officer Harper asked the dispatcher to call a friend of Lawanna Williams to see if she could come to assist Lawanna Williams. The dispatcher was not able to get in touch with the friend and at approximately 4:30 p.m., Officer Pilcher drove Lawanna Williams home.

At approximately 5:00 p.m., Officer Holton transported Frederick Williams to the Ouachita Correctional Center ("OCC") and turned him over to the OPSO for booking. At the

OCC, Officer Holton was given a copy of the warrant. Before Frederick Williams was booked, Officer Holton noted the discrepancies in the date of birth, Social Security Number, and race. Officer Holton advised Frederick Williams of the mistake in identity. Frederick Williams was immediately released and Officer Holton drove him home. Frederick Williams arrived home at approximately 5:41 p.m. The citations for lack of insurance, switched tags, and failure to register were later dismissed. Frederick Williams pled guilty to the lack of motor vehicle inspection sticker charge and paid a fine.

The City of Monroe has in place a policy of procedures to be followed by its officers when making arrests. The policy provides in part:

> II. <u>Procedures on Arrest Warrants</u>:
>
> A. Obtaining a warrant abstract.
>
> 1. Officers may conduct warrant checks the following ways:
>
> a. If an outstanding warrant is located, the officer may use this information to detain the subject until a confirmation call can be made to the originating agency.
>
> b. Via communications: Officers may request a warrant check on the primary channel of their radios. Officers will provide the operator with the name and date of birth of the subject. For NCIC checks it will be necessary to include the Social Security Number or driver's license number of the subject.
>
> c. Telephone contact: Warrant checks may be conducted over the telephone.
>
> 2. Confirming the warrant abstract.

   a. Officers may detain an individual when a warrant is known to exist for that person. An arrest can be made upon confirmation of the warrant via the Communications Teletype. For NCIC warrants, a call shall be made to the jurisdiction holding the warrant to confirm that they will extradite the subject for the warrant and are forwarding a copy of the warrant, warrant number, charges, and authority.

   b. Confirmation calls shall be made only when the subject is in custody and will be taken to appropriate Jail, or booked for the warrant.

   c. Once a warrant is confirmed, it is removed from the active files. If for any reason the subject is not booked after warrant confirmation, the officer must immediately inform their supervisor.

. . .

D. Arrest Procedures

   1. Before making an arrest on a warrant, officers must be certain that the person to be arrested is in fact the person named or described in the warrant.

   2. It is not necessary that the arresting officer have possession of the warrant at the time of the arrest provided the officer has knowledge that a warrant is outstanding.

   3. A warrant of arrest may be teletyped or telegraphed and the copy has the same effect and authority as the original warrant. Officers shall ascertain that the teletyped or telegraphic warrant contains all the necessary information.

   4. The officer must declare his intention to make the arrest and state that the arrest is being made under the authority of a warrant.

   5. Whenever identification of the defendant is questionable and the validity of a warrant is challenged by a defendant, it shall be the responsibility of the arresting officer to verify the

> warrant by contacting the issuing Court, or Agency.
>
> a. Verification shall be made as soon as possible either by telephone or radio <u>prior to booking the defendant.</u>
>
> b. In all other instances when the validity of the warrant cannot be verified, the duty supervisor shall decide whether or not the defendant should be booked.

As a result of this incident, Plaintiffs suffered emotional distress, humiliation, and aggravation.

## *II. Conclusions of Law*

### A. Jurisdiction

Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiffs have alleged violations of § 1983. Further, supplemental jurisdiction pursuant to 28 U.S.C. § 1367 exists over Plaintiffs' Louisiana law claims.

### B. Section 1983

Section 1983 provides individuals with a civil remedy for the violation of constitutional rights. To establish a § 1983 violation, the plaintiff must show that a person has deprived him of a federal constitutional or statutory right, and that the person acted under color of state law when he deprived him of the federal right. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

### 1. Under Color of State Law

The parties have stipulated that at all relevant times Officers Holton, Pilcher, Hollingsworth, and Biggers were acting under color of state law in their capacity as a police officers for the City of Monroe.

2.  **Violation of Federal Right**

Plaintiffs' contend that Defendants deprived them of rights, privileges, and immunities guaranteed to them under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

a.  **Plaintiffs' Claims Under the Fifth, Sixth, and Eighth Amendments**

The Fifth Amendment does not apply to actions by municipalities, only to actions by the federal government. *Morin v. Caire*, 77 F.3d 116 (5th Cir. 1996). Defendants are not federal agents and, thus, the Fifth Amendment does not apply to Plaintiffs' claims against them.

The Sixth Amendment concerns only constitutional rights after criminal prosecutions have commenced. *United States v. MacDonald*, 456 U.S. 1 (1982). Plaintiffs' claims against Defendants did not arise out of conduct which occurred after criminal prosecutions had commenced. Therefore, the Sixth Amendment does not apply to Plaintiffs' claims against Defendants.

Finally, the Eighth Amendment protects persons from excessive bail or fines and from cruel and unusual punishment after a person has been convicted of a crime. *Johnson v. City of Dallas*, 61 F.3d 442, 444 n.5 (5th Cir. 1995). Plaintiffs' had not been convicted of a crime at the time of the alleged violations. Therefore, the Eighth Amendment does not apply to Plaintiffs' claims against Defendants.

Accordingly, the Court finds that Plaintiffs have failed to state a claim under either the Fifth, Sixth, or Eighth Amendments to the United States Constitution and these claims are DISMISSED WITH PREJUDICE.

### b.   Plaintiffs' Claims against Officers Hollingsworth and Pilcher

The Court finds that Plaintiffs' have failed to present any evidence to establish that Officers Hollingsworth or Pilcher deprived them of any rights guaranteed to them under the United States Constitution.

Officer Hollingsworth's only involvement in this matter was that he made the initial traffic stop and identity and vehicle registration check. Officer Hollingsworth did not arrest or detain either Frederick or Lawanna Williams. In fact, Officer Hollingsworth left the scene approximately seventeen minutes after first stopping Frederick Williams and, thus, he was not present when Officer Holton learned of the outstanding warrant and arrested Frederick Williams.

Officer Pilcher's only involvement in this matter is that he was present at the scene, called for a wrecker to impound the vehicle, and drove Lawanna Williams home. Officer Pilcher did not arrest or detain either Frederick or Lawanna Williams.

Accordingly, Plaintiffs' § 1983 claims against Officers Hollingsworth and Pilcher are DISMISSED WITH PREJUDICE.

### c.   Lawanna Williams' Claims for Wrongful Detention

The Court finds that Lawanna Williams has failed to present any evidence to establish that Defendants deprived her of a clearly established constitutional right. The Court finds that Lawanna Williams was not detained by Defendants and was free to leave the scene of the arrest.

Accordingly, Lawanna Williams' § 1983 claims against Defendants are DISMISSED WITH PREJUDICE.

### d. Valerie Williams' § 1983 Claims

The Court finds that Valerie Williams has failed to allege a violation of any clearly established constitutional right. Valerie Williams was not present at the scene. Although Valerie Williams was upset upon hearing of her father's arrest, there is no clearly established constitutional right not to have your father arrested. Accordingly, Valerie Williams' § 1983 claims against Defendants are DISMISSED WITH PREJUDICE.

### e. Frederick Williams' Claims for False Arrest and Detention under the Fourth and Fourteenth Amendments

"Police officers, like other public officials acting within the scope of their official duties, are shielded from claims of civil liability, including § 1983 claims, by qualified immunity." *Morris v. Dillard Department Stores, Inc.*, 277 F.3d 743, 753 (5th Cir. 2001). "The well-established test for qualified immunity requires us to engage in a two-step inquiry. First, we must determine whether a public official's conduct deprived a § 1983 plaintiff of a clearly established constitutional or statutory right." *Sanchez v. Swyden*, 139 F.3d 464, 466 (5th Cir. 1998) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Salas v. Carpenter*, 980 F.2d 299, 304 (5th Cir. 1992)). "Second, a public official may successfully assert the defense of qualified immunity even though the official violates a person's civil rights, provided the official's conduct was objectively reasonable." *Sanchez*, 139 F.3d at 467; *Morris*, 2001 WL 1650937 at *8. "This two-part test sits atop a firm policy foundation. Foremost among these policy considerations is the deterrent effect that civil liability may have on the willingness of public officials to fully discharge their professional duties." *Sanchez*, 139 F.3d at 467.

1. **Violation of a Clearly Established Constitutional Right**

"There is no cause of action for false arrest under section 1983 unless the arresting officer lacked probable cause." *Fields v. City of South Houston*, 922 F.2d 1183, 1189 (5th Cir. 1991) (quoting *Street v. Surdyka,* 492 F.2d 368, 371-72 (4th Cir. 1974)). "Probable cause to arrest exists when the arresting officer, at the time of the arrest, has knowledge sufficient to warrant a prudent man in believing that the person arrested has committed or was committing an offense." *Gladden v. Roach*, 864 F.2d 1196, 1199 (5th Cir. 1989) (citing *United States v. Bertram*, 719 F.2d 735, 738 (5th Cir. *1983*)). *See also*, La. Code Crim. P. art. 213.

Defendants contend that, even in the absence of a warrant, Officer Holton had probable cause to arrest and detain Frederick Williams based solely upon any one of the multiple misdemeanor traffic violations which he committed in their presence.

"The Supreme Court recently found that warrantless arrests for misdemeanor violations committed in the presence of the officer do not violate the Fourth Amendment." *Price v. Roark*, 256 F.3d 364, 369-70 (5th Cir. 2001) (citing *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001)). Further, "[i]f there was probable cause for any of the charges made, . . . then the *arrest* was supported by probable cause, and the claim for false arrest fails." *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1994) (emphasis in original). In *Wells*, the plaintiff was arrested and charged with resisting a search *and* disorderly conduct. *Id.* at 93. The disorderly conduct charge was later dropped, and the plaintiff was tried and convicted on the charge of resisting a search. *Id.* Plaintiff filed suit claiming that, among other things, he was falsely arrested for disorderly conduct and resisting a search because there was no probable cause. *Id.* at 94. The Fifth Circuit noted that "[t]he claim for false arrest does not cast its primary focus on the validity of each

11

individual charge; instead [the Court] [focuses] on the validity of the arrest. If there was probable cause for any of the charges made – here either disorderly conduct or resisting a search – then the arrest was supported by probable cause, and the claim for false arrest fails." *Id.* at 95. Thus, the fact that he was also arrested for disorderly conduct, a charge that was later dismissed, was not material because plaintiff could not demonstrate the invalidity of his conviction for resisting a search as required by *Heck v. Humphrey*, 522 U.S. 477 (1994). *Id.*

In the present case, Officer Holton did not arrest Frederick Williams for any of the misdemeanor traffic violations. Instead, Officer Holton chose to issue citations in lieu of arrest. Frederick Williams' arrest was based solely upon the outstanding warrant. Therefore, the Court finds that *Wells v. Bonner* does not apply.

Defendants also contend that Officer Holton had probable cause to arrest and detain Frederick Williams based upon the information supplied by the OPSO. According to Defendants, this information appeared to be positive and reliable, and Officer Holton had reasonable cause to believe that Frederick Williams was the person named in the warrant.

Article 213 of the Louisiana Code of Criminal Procedure provides that a peace officer may arrest a person without a warrant when "the peace officer has reasonable cause to believe that the person to be arrested had committed an offense, although not in the presence of the officer; or the peace officer has received positive and reliable information that another peace officer from this state holds an arrest warrant . . . ." La. Code Crim. P. art. 213(3)-(4). Further, "[t]he Fourth Amendment is not violated by an arrest based on probable cause, even if the wrong person is arrested, if the arresting officer had a reasonable, good faith belief that he was arresting the correct person." *Blackwell v. Barton*, 34 F.3d 298, 303 (5th Cir. 1994) (citing *Hill v.*

12

*California*, 401 U.S. 797 (1971)).

In *Blackwell*, a peace officer had a valid arrest warrant for Melinda Allen. He knew that Melinda Allen worked in health clubs and went by the name "Mindy." The officer went to a health club where the plaintiff worked and asked to speak to "Mindy." The plaintiff subsequently approached the officer and identified herself as "Mindy." The officer claimed that the plaintiff's appearance was "substantially similar" to the physical description that he had received of Melinda Allen. The plaintiff gave the officer her driver's license, but he never looked at it. The officer asked the plaintiff to follow him to the county law enforcement center, which she did. It was subsequently determined that the plaintiff was not Melinda Allen and she was released.

The plaintiff brought an action against the officer under § 1983 alleging that the officer unlawfully arrested and detained her in violation of the Fourth and Fourteenth Amendments. The officer argued that he was entitled to qualified immunity. The court employed the two-step process mentioned above. First, the court looked at whether the plaintiff had shown a deprivation of a clearly established constitutional right, in that case the Fourth Amendment. According to the court, the issue was whether the officer had probable cause to believe that the plaintiff was the person named in the warrant. The test for probable cause was " whether a reasonable officer in [the defendant's] position could believe that there was reasonable cause to believe that [the plaintiff] was the person named in the warrant."[2] *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635 (1987)). "[W]e may not determine the reasonableness of Barton's

---

[2]This is an objective inquiry. *Blackwell*, 34 F.3d at 303. Thus, any subjective beliefs harbored by Defendants are immaterial.

actions by considering, with the benefit of hindsight, what other, more reasonable actions might have been available to him." *Blackwell*, 34 F.3d at 304. The court decided that the officer had acted reasonably. The court's decision was based, at least in part, on the fact that the plaintiff was "of the same height and weight, sex, race, age, nickname, and at the location where [the defendant] expected to find [the person named in the warrant]."[3] *Id.* at 304. The court concluded that the plaintiff failed to prove that she was deprived of a clearly established constitutional right. The defendant was, therefore, entitled to qualified immunity. *Id.*

In the present case, the Court finds that Officer Holton arrested Frederick Williams pursuant to a facially valid warrant, and that it was reasonable for an officer in Officer Holton's position to believe that there was reasonable cause to believe that Frederick Williams was the person named in the warrant. Officer Holton gave the dispatcher Frederick Williams' driver's license number. With the driver's license number, the dispatcher was able to obtain Frederick Williams' name, date of birth, race, and other identifying information. The dispatcher gave the OPSO Frederick Williams' correct name, date of birth, and race. A few minutes later, the OPSO called the dispatcher and informed her that the OPSO had a warrant in hand for Frederick Williams.

The Court finds that it was objectively reasonable for Officer Holton to rely upon the dispatcher's confirmation of an outstanding warrant since he had submitted to the dispatcher information sufficient to identify Frederick Williams. The Court concludes that Officer Holton

---

[3]The court placed little or no weight on the fact that the plaintiff gave the defendant her driver's license. The court cited the Supreme Court's observance in *Hill v. California*, 401 U.S. 797 (1971), that "aliases and false identifications are not uncommon." *Blackwell*, 34 F.3d at 303 n.4 (quoting *Hill*, 401 U.S. at 802).

14

had probable cause to arrest and detain Frederick Williams and, thus, his conduct did not deprive Frederick Williams of his clearly established constitutional rights under Fourth and Fourteenth Amendments.

### 2. <u>Objectively Reasonable</u>

For the reasons stated earlier, the Court finds that Officer Holton's conduct was objectively reasonable. Accordingly, Officer Holton is entitled to qualified immunity with regard to Frederick Williams' § 1983 claims for wrongful arrest and detention.

### f. **Plaintiffs' Claims against Officer Biggers**

A supervisor may be liable for the actions of subordinates under § 1983 "if he is either personally involved in the constitutional deprivation or there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Casanova v. City of Brookshire*, 119 F.Supp.2d 639, 660 (S.D. Tex. 2000) (citing *Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999)). "In other words, 'the misconduct of the subordinate must be affirmatively linked to the action or inaction of the supervisor.' To prevail against a supervisory official, the plaintiff must demonstrate that the official's act, or failure to act, either caused or was the motivating force behind the plaintiff's harm." *Id.* (quoting *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997)). "In sum, the supervisor's conduct must be measured against the standard of deliberate indifference. For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." (Internal citations and quotation marks omitted) *Id.* at 660-61.

The Court finds that Officer Biggers' only involvement in this matter was his presence at

the scene for approximately five minutes. Further, having found no misconduct on the part of Officers Hollingsworth, Holton, or Pilcher, Officer Biggers cannot be held liable as a supervisory official.

Accordingly, Plaintiffs' § 1983 claims against Officer Biggers are DISMISSED WITH PREJUDICE.

### g. Plaintiffs' Claims Against the City of Monroe

Plaintiffs also contend that the City of Monroe is liable for failing to properly discipline, control, hire, supervise, and train Officers Hollingsworth, Pilcher, Harper, Holton, and Biggers.

A municipality cannot be held liable under § 1983 based on the doctrine of *respondeat superior*. *Monell v. New York City Dep't of Social Serv.*, 436 U.S. 658, 691-92 (1978). Instead, a plaintiff must identify a municipal policy or custom that has caused his injury. *Id.* at 691-694. The Fifth Circuit defines an official policy as "[a] policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority." *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984)). "A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy" may also constitute an official policy for purposes of § 1983 liability. *Id.* However,

> [i]t is not enough for a § 1983 plaintiff to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a

> plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."

*Board of the County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997).

"It is clear that a municipality's policy of failing to train its police officers can give rise to § 1983 liability." *Brown*, 219 F.3d at 457. However, "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). "For a lack of training or supervision to constitute deliberate indifference, plaintiff must demonstrate at least a pattern of similar violations." *Cousin v. Small*, No. Civ. A. 00-0069, 2001 WL 617455, at *7 (E.D. La. June 4, 2001). "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997).

Plaintiffs have produced no evidence at trial to support their claim against the City of Monroe for failing to properly discipline, control, hire, supervise, and train Officers Hollingsworth, Pilcher, Holton, Harper, or Biggers.

Accordingly, Plaintiffs' § 1983 claims against the City of Monroe are DISMISSED WITH PREJUDICE.

C.  **State Law Claims**

Plaintiffs assert the following claims under Louisiana law: (1) assault and battery, (2) invasion of privacy, (3) false arrest and imprisonment, and (4) intentional infliction of emotional distress. The Court has jurisdiction to hear Plaintiffs' state law claims under 28 U.S.C. § 1367 as

the claims arise out of the same facts. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

1. **Assault and Battery**

"An assault is the imminent threat of a battery. . . . A battery is defined as a harmful or offensive contact, resulting from an act intended to cause the plaintiff to suffer such a contact. Battery is an intentional tort. In [Louisiana], intent refers to the consequence of the act, not the act itself. Only where the actor entertains a desire to bring about the consequences that follow or where the actor believes they are substantially certain to follow, has the act been characterized as intentional." *Bulot v. Intracoastal Tubular Services, Inc.*, No. 98-2105 (La. App. 4 Cir. 2/24/99), 730 So.2d 1012, 1018-19 (citing *Caudle v. Betts*, 512 So.2d 389, 391 (La.1987).

Plaintiffs produced no evidence at trial to support their claim of assault or battery.

2. **Invasion of Privacy**

Louisiana recognizes the tort of invasion of privacy. *Sapia v. Regency Motors of Metairie, Inc.*, No. 01-30237, 2001 WL 2916, at *3; *Gerard v. Parish of Jefferson*, 424 So. 2d 440, 445 (La. App. 5th Cir. 1982). "Louisiana courts have defined the right of privacy as the right to be let alone or the right to an inviolate personality. This right embraces four different interests, each of which may be invaded in a distinct manner: (1) the appropriation of an individual's name or likeness for the use or benefit of the defendant; (2) an unreasonable intrusion by the defendant upon the plaintiff's physical solitude or seclusion; (3) publicity that unreasonably places the plaintiff in a false light before the public; and (4) unreasonable public disclosures of embarrassing private facts. Violation of the right of privacy is actionable only when a defendant's conduct is unreasonable and seriously interferes with another's privacy

18

interest. It is not necessary to prove that the defendant acted with malicious intent. A determination of whether the defendant's actions were reasonable is made by balancing the interests of the plaintiff in protecting his privacy from serious invasions with the defendant's interest in pursuing his course of conduct. A defendant's conduct is reasonable and non-actionable, even though it may slightly invade plaintiff's privacy, if the action is properly authorized or justified by the circumstances." (Internal citations and quotation marks omitted) *Melder v. Sears, Roebuck and Co.*, No. 98-0939, (La. App. 4 Cir., 3/31/99), 731 So.2d 991, 1000.

Plaintiffs produced no evidence at trial to support their claim of invasion of privacy.

3. **False Arrest and Imprisonment**

"If a person is arrested pursuant to a valid warrant, there is no false arrest and no false imprisonment." *Jenkins v. Baldwin*, 801 So. 2d 485, 496 (La. App. 4th Cir. 2001); *Deville v. Jefferson Parish Sheriff's Dept.*, 762 So. 2d 641, 642-43 (La. App. 3d Cir. 2000). Additionally, as a matter of law, there is no claim for false arrest if there was probable cause to arrest the plaintiff. *Morris*, 277 F.3d at 753. The Court has already concluded that Officer Holton arrested Frederick Williams pursuant to a facially valid warrant, and that a reasonable officer in Officer Holton's position would have believed that there was reasonable cause to believe that Frederick Williams was the person named in the warrant. Therefore, Frederick Williams has no claim for false arrest or false imprisonment under Louisiana law.

4. **Intentional Infliction of Emotional Distress**

To recover for intentional infliction of emotional distress under Louisiana law, Plaintiffs must establish that (1) the conduct of the Defendants was extreme and outrageous; (2) the emotional distress suffered was severe; (3) the Defendants desired to inflict severe emotional

distress or knew that such distress would be substantially certain to result from the conduct. *Morris*, 2001 WL 1650937 at *10 (citing *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991)). "Louisiana courts, like courts in other states, have set a very high threshold on conduct sufficient to sustain an emotional distress claim, and the Louisiana Supreme Court has noted that courts require truly outrageous conduct before allowing a claim . . . even to be presented to a jury." *Morris*, 277 F.3d at 753.

Plaintiffs produced no evidence at trial to support their claim of intentional infliction of emotional distress.

### III.  *Conclusion*

For the foregoing reasons, the Court finds in favor of Defendants and against Plaintiffs. Accordingly, Plaintiffs' claims are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this __7__ day of __June__, 2003.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

COPY SENT:
DATE: 6/9/03
BY: Dm
TO: Kincade
    Gardner
    Noah